1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 JIMMIE CARTER, | Case No. 2:19-cv-08986-JGB (MAA) |
| 12 Plaintiff, | |
| 13 v. | |
| 14 | **MEMORANDUM DECISION AND ORDER DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND** |
| 15 J. GASTELO *et al.*, | |
| 16 Defendants. | |

17

18 **I.     INTRODUCTION**

19        On October 18, 2019, Plaintiff Jimmie Carter ("Plaintiff"), a California

20 inmate at California Men's Colony ("CMC"), proceeding *pro se* and *in forma*

21 *pauperis*, filed a Complaint alleging violations of his civil rights pursuant to 42

22 U.S.C. § 1983 ("Section 1983").  (Compl., ECF No. 1.)  On December 23, 2019, the

23 Court screened and dismissed the Complaint with leave to amend ("Order

24 Dismissing Complaint").  (Order Dismiss Compl., ECF No. 13.)  On February 27,

25 2020, Plaintiff filed a First Amended Complaint ("FAC") (FAC, ECF No. 16),

26 which the Court screened and dismissed with leave to amend on March 16, 2020

27 ("Order Dismissing FAC") (Order Dismiss. FAC, ECF No. 17).  In screening the

28 ///

Complaint and FAC, the Court advised Plaintiff that he failed to allege any viable claims.  (*See generally* Order Dismiss Compl.; Order Dismiss FAC.)

On June 16, 2020, Plaintiff filed a Second Amended Complaint ("SAC"). (SAC, ECF No. 19.)  The Court has screened the SAC as prescribed by 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B).  For the reasons stated below, the SAC is **DISMISSED WITH LEAVE TO AMEND**.  Plaintiff is **ORDERED** to, within thirty days after the date of this Order, either: (1) file a Third Amended Complaint; or (2) advise the Court that Plaintiff does not intend to pursue this lawsuit further and will not file a Third Amended Complaint.

## II.   SUMMARY OF ALLEGATIONS IN SAC[1]

### A.   Defendants

The SAC is filed against the following individuals who work at CMC, in both their individual and official capacities:  (1) J. Gastelo, Head Warden; (2) K. McQuaid, Associate Warden; (3) Captain J. Fernandez; (4) Sergeant Wallace; (5) Sergeant Miller; (6) Dr. Tyler Campbell; (7) Gloria Mendez, LVN (presumably, this refers to "licensed vocational nurse"); (8) Steven Tanner, LVN; (9) Chris Venner, RN (presumably, this refers to "registered nurse"); (10) Jacob Y. Parrea, RN; and (11) Masigman, LVN (each a "Defendant" and collectively, "Defendants"). (SAC, at 3–5.)[2]  Defendants Gastelo, McQuaid, and Fernandez collectively are referred to as the "Supervisor Defendants"; Defendants Wallace and Miller collectively are referred to as the "Sergeant Defendants"; and Defendants Mendez, Tanner, Venner, Parrea, and Masigman collectively are referred to as the "Nurse Defendants."

---

[1] The Court summarizes the allegations and claims in the SAC.  In doing so, the Court does not opine on the veracity or merit of Plaintiff's allegations and claims, nor does the Court make any findings of fact.

[2] Citations to pages in docketed documents reference those generated by CM/ECF.

1         **B.**    **Claim 1**

2         On June 19, 2019, Plaintiff slipped and fell in the west facility chow hall of

3 CMC on the wet floor next to the scullery. (*Id*., at 6, 9, 11.)  The floor was dirty,

4 wet, littered with food and wrappers, and cluttered with trash cans. (*Id*., at 11.)

5 Plaintiff was not warned that the floor was wet (*id*., at 12) and there were no mats to

6 prevent Plaintiff from slipping on the wet floor (*id*., at 9).  Plaintiff could not get up

7 and was in "tremendous" pain. (*Id*., at 6.)  Plaintiff has a medical history of having a

8 back operation on his lower disc in 2011. (*Id*., at 14.)

9         It is the policy of staff to inform medical staff by "Code 1" of the need for

10 emergency medical treatment. (*Id*., at 6.)  Defendant Miller—the supervisor on duty

11 who was responsible for making sure the floors were mopped dry—initiated a Code

12 1. (*Id*., at 6, 11–12.)  Defendants Wallace, Tanner, Mendez, and Masigman

13 responded to the Code 1. (*Id*., at 13–16.)  Defendants Tanner, Mendez, and

14 Masigman examined Plaintiff, and observed that Plaintiff had a large knot on the

15 back of his head and elevated blood pressure. (*Id*.)  Defendant Tanner did not ask

16 Plaintiff about any prior medical history or medical condition. (*Id*., at 15.)

17 Defendants Tanner, Mendez, and Masigman told Plaintiff that he was a "strong

18 black man" and instructed him to stand up. (*Id*., at 12, 14–16.)  Plaintiff replied that

19 he could not stand up. (*Id*., at 12, 14, 15.)  Defendants Tanner, Mendez, and

20 Masigman denied Plaintiff emergency medical treatment and told Defendants Miller

21 and Wallace to cancel the Code 1 medical emergency. (*Id*., at 14–16.)  Defendants

22 Tanner, Venner and Parrea told Defendant Wallace that a Code 1 would not be

23 necessary. (*Id*., at 6.)  Defendant Wallace canceled the Code 1. (*Id*., at 6, 13.)

24 Defendants Miller, Wallace, Tanner, Mendez, and Masigman engaged in a "cover

25 up" of Plaintiff's injuries and acted "in concert" with each other to cancel the Code 1

26 to prevent Plaintiff from receiving medical treatment. (*Id*., at 13, 15.)

27         Defendant Miller ordered two inmates—one of whom was an ADA worker

28 named Gilbert Hernandez—to carry Plaintiff outside so the "chow [could] continue."

1   (*Id*., at 7, 12, 14–16.)  The two inmates carried Plaintiff outside the chow hall and

2   placed him on the ground, where he remained for an hour.  (*Id*., at 7, 11, 14, 16.)

3   Plaintiff continued requesting medical treatment while laying on the ground outside

4   the chow hall for another hour, but did not receive treatment.  (*Id*., at 12, 14.)

5         The two inmates then carried Plaintiff to dorm #9, where Plaintiff passed out.

6   (*Id*., at 7, 11, 13–14, 16.)  Another Code 1 was called.  (*Id*.)  Defendant Mendez took

7   Plaintiff's blood pressure and discovered that it was 200/170.  (*Id*.)

8         At that time, Plaintiff was transported by ambulance to CMC-East Hospital.

9   (*Id*., at 7, 9, 16.)  After a medical examination, it was discovered that Plaintiff had a

10  large knot at the back of his head and was unable to walk.  (*Id*., at 7, 9.)  Dr. Donan

11  Bulosan administered an injection into Plaintiff's tailbone area, administered an

12  EKG, and issued crutches to Plaintiff to assist with his mobility impairment.  (*Id*., at

13  7, 11, 13–14, 16.)

14        Defendant Gastelo is the acting warden of CMC.  (*Id*., at 6.)  Her duties are:

15  (1) to ensure that CMC functions according to federal regulation; (2) to provide

16  Plaintiff with adequate shelter, food, clothing, and sanitation; and (3) to train staff

17  through her supervision.  (*Id*.)  Defendant Gastelo was aware that the chow hall has

18  water leaks from the scullery and is having a new chow hall built that is not yet

19  finished.  (*Id*., at 7.)  Defendant Gastelo has not employed the proper safety

20  measures to prevent injuries, as a result of which Plaintiff was injured and denied

21  adequate emergency medical treatment.  (*Id*.)

22        Defendant McQuaid is the Associate Warden of CMC who acts under the

23  supervision of Defendant Gastelo.  (*Id*., at 9.)  Defendant McQuaid is responsible

24  for:  (1) the safety and security of CMC; (2) preventing injuries to Plaintiff; and

25  (3) providing Plaintiff adequate medical care when needed.  (*Id*.)  Defendant

26  McQuaid is aware that the sanitation issue in the chow hall is inadequate and could

27  cause injuries because the leak from the scullery keeps water on the floor.  (*Id*.)

28  ///

4

1  Defendant McQuaid's subordinates denied Plaintiff needed emergency medical
2  treatment on June 19, 2019.  (*Id.*)

3      Defendant Fernandez is responsible for:  (1) maintaining the west facility of
4  CMC; (2) supervising the lieutenant, sergeant, and correctional officers; and (3) the
5  "Code-1 emergency medical attention and the personal safety of Plaintiff during the
6  normal course of operation."  (*Id.*, at 10.)  Defendant Fernandez's subordinates,
7  Defendants Miller and Wallace, cancelled the Code 1 on June 19, 2019.  (*Id.*)

8      For the violations in Claim 1, Plaintiff seeks $250,000 compensatory damages
9  from each Defendant; $5 million in punitive damages; and treble damages.  (*Id.*, at
10 21.)

11

12 **C.    Claim 2**

13     On June 27, 2019, Plaintiff was walking on crutches down the E-yard
14 walkway when his crutches went into an unguarded hole.  (*Id.*, at 17, 19–20.)  There
15 were no warning signs, cones, flags, or staff to ensure Plaintiff's safety.  (*Id.*, at 17,
16 20.)  Plaintiff fell head-first through the six-foot hole and hit his head and chin on
17 an iron plate.  (*Id.*)  The fall also caused "the wind to be taken out of him," and
18 broke Plaintiff's crutches in half.  (*Id.*)  Plaintiff already was injured from his fall on
19 June 19, 2019.  (*Id.*)

20     The hole was there for the installation of pipes for the new chow hall that was
21 under construction.  (*Id.*, at 17, 20.)  The work was being done by inmate day labor
22 and supervised by selected union workers.  (*Id.*)

23     Correctional Officer E. Groupel witnessed Plaintiff fall and ordered a Code 1
24 medical emergency.  (*Id.*, at 17, 19.)  "Union worker Tony" was driving by, almost
25 ran over Plaintiff, and tried to assist Plaintiff out of the hole, but Plaintiff could not
26 move.  (*Id.*, at 18–19.)  An ambulance arrived, and LVN Coon put a cervical collar
27 on Plaintiff's neck due to the "severe pain."  (*Id.*, at 17, 19.)  Plaintiff was
28 transported via ambulance to CMC East Medical, where he was treated by Dr.

Bulosan. (*Id*.) Due to the severe pain, Plaintiff was unable to sit up, had to remain in the gurney, suffered severe headaches, and is unable to use crutches to move around. (*Id*., at 17, 20.)

Defendants Gastelo, McQuaid, and Fernandez were supervising the construction site and failed to take proper measures to prevent injuries. (*Id*., at 17–20.) As CMC-West is a designated medical facility that houses hearing- and mobility-impaired inmates, it was unreasonable to not ensure the safety of the inmate population. (*Id*., at 18.) Defendant Gastelo is responsible for the training of her subordinates to ensure the security and safety of CMC. (*Id*., at 17.) Defendants McQuaid's and Fernandez's offices in the west facility enable them to oversee the construction site. (*Id*.) In addition, Defendant McQuaid has walked and observed the holes and know that they pose a substantial risk of injury. (*Id*., at 19.)

Defendant Gastelo did not action the safety of the hazard area until Plaintiff wrote her a letter a month after the incident. (*Id*., at 18.) Defendant Gastelo "disregarded it," but had knowledge of Plaintiff's crutches and that Plaintiff had fallen in the hole. (*Id*.)

For the violations in Claim 2, Plaintiff seeks $100,000 in damages each from Defendants Gastelo, McQuaid, and Fernandez, for a total of $300,000. (*Id*., at 22.)

## III. STANDARD OF REVIEW

Federal courts must conduct a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity (28 U.S.C. § 1915A), or in which a plaintiff proceeds *in forma pauperis* (28 U.S.C. § Section 1915(e)(2)(B)). The court must identify cognizable claims and dismiss any complaint, or any portion thereof, that is: (1) frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

1     When screening a complaint to determine whether it fails to state a claim

2  upon which relief can be granted, courts apply the Federal Rule of Civil Procedure

3  12(b)(6) ("Rule 12(b)(6)") standard.  *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121

4  (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § Section 1915A);

5  *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (applying the Rule 12(b)(6)

6  standard to 28 U.S.C. § 1915(e)(2)(B)(ii)).  To survive a Rule 12(b)(6) dismissal, "a

7  complaint must contain sufficient factual matter, accepted as true, to 'state a claim

8  to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

9  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has

10  facial plausibility when the plaintiff pleads factual content that allows the court to

11  draw the reasonable inference that the defendant is liable for the misconduct

12  alleged." *Iqbal*, 556 U.S. at 678.  Although "detailed factual allegations" are not

13  required, "an unadorned, the-defendant-unlawfully-harmed-me accusation"; "labels

14  and conclusions"; "naked assertion[s] devoid of further factual enhancement"; and

15  "[t]hreadbare recitals of the elements of a cause of action, supported by mere

16  conclusory statements" are insufficient to defeat a motion to dismiss. *Id.*

17  (quotations omitted).  "Dismissal under Rule 12(b)(6) is appropriate only where the

18  complaint lacks a cognizable legal theory or sufficient facts to support a cognizable

19  legal theory." *Hartmann v.  Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122

20  (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097,

21  1104 (9th Cir. 2008)).

22     In reviewing a Rule 12(b)(6) motion to dismiss, courts will accept factual

23  allegations as true and view them in the light most favorable to the plaintiff.  *Park

24  v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017).  Moreover, where a plaintiff is

25  appearing *pro se*, particularly in civil rights cases, courts construe pleadings

26  liberally and afford the plaintiff any benefit of the doubt.  *Wilhelm*, 680 F.3d at

27  1121.  "If there are two alternative explanations, one advanced by defendant and the

28  other advanced by plaintiff, both of which are plausible, plaintiff's complaint

1  survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202,

2  1216 (9th Cir. 2011). However, the liberal pleading standard "applies only to a

3  plaintiff's factual allegations." *Neitzke v. Williams,* 490 U.S. 319, 330 n.9 (1989),

4  *superseded by statute on other grounds*, 28 U.S.C. § 1915. Courts will not "accept

5  any unreasonable inferences or assume the truth of legal conclusions cast in the

6  form of factual allegations." *Ileto v. Glock Inc.,* 349 F.3d 1191, 1200 (9th Cir.

7  2003). In giving liberal interpretations to complaints, courts "may not supply

8  essential elements of the claim that were not initially pled." *Chapman v. Pier 1*

9  *Imps. (U.S.), Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (quoting *Pena v. Gardner*, 976

10  F.2d 469, 471 (9th Cir. 1992)).

11

12  **IV.   DISCUSSION**

13      **A.   The SAC Does Not State Any Official Capacity Claims.**

14      A suit against a defendant in his or her individual capacity "seek[s] to impose

15  personal liability upon a government official for actions he takes under color of

16  state law . . . . Official-capacity suits, in contrast, 'generally represent only another

17  way of pleading an action against an entity of which an officer is an agent.'"

18  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Social*

19  *Servs.*, 436 U.S. 658, 690 n.55 (1978)). The SAC alleges that Defendants are

20  employed at CMC, which is part of the California Department of Corrections

21  ("CDCR"), a state agency. (*See* SAC, at 3–5.) As such, any official capacity

22  claims against Defendants properly are treated as claims against the State of

23  California. *See Leer v. Murphy*, 844 F.2d 628, 631–32 (9th Cir. 1998) (explaining

24  that a lawsuit against state prison officials in their official capacities was a lawsuit

25  against the state).

26      California is not a "person" subject to Section 1983, and the Eleventh

27  Amendment bars damages actions against state officials in their official capacity.

28  *Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir. 2007); *Nat. Res. Def. Council v.*

8

1    *Cal. DOT*, 96 F.3d 420, 421 (9th Cir. 1996) ("State immunity extends to state

2    agencies and to state officers, who act on behalf of the state and can therefore assert

3    the state's sovereign immunity.").  However, state officials sued in their official

4    capacity are considered "persons" when they are sued for prospective declaratory or

5    injunctive relief under Section 1983; the Eleventh Amendment does not bar such

6    claims.  *Flint*, 488 F.3d at 825; *Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d

7    1032, 1036 (9th Cir. 1999) ("*Ex Parte Young* provided a narrow exception to

8    Eleventh Amendment immunity for certain suits seeking declaratory and injunctive

9    relief against unconstitutional actions taken by state officers in their official

10   capacities.")  As the SAC does not seek prospective declaratory or injunctive relief,

11   this exception to Eleventh Amendment immunity does not apply.  (*See* SAC, at 21–

12   22.)

13        For these reasons, Plaintiff's claims against Defendants in their official

14   capacities fail.  The Court previously explained the deficiencies of Plaintiff's official

15   capacity claims.  (*See* Order Dismiss Compl., at 6–7.)  Presumably in response,

16   Plaintiff did not include any claims against Defendants in their official capacities in

17   the FAC (*see generally* FAC), yet inexplicably included claims against Defendants

18   in their official capacities in the SAC (SAC, at 3–5).  If Plaintiff includes claims for

19   damages against Defendants in their official capacities in any amended complaint,

20   such claims will be subject to dismissal.

21

22        **B.    The SAC Does Not State Any Section 1983 Claims Against**

23            **Defendants in Their Individual Capacities.**

24        Section 1983 provides a cause of action against "every person who, under

25   color of any statute . . . of any State . . . subjects, or causes to be subjected, any

26   citizen . . . to the deprivation of any rights, privileges, or immunities secured by the

27   Constitution and laws . . . ."  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alteration in

28   original) (quoting 42 U.S.C. § 1983).  The purpose of Section 1983 is "to deter state

actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt*, 504 U.S. at 161.  To state a claim under Section 1983, a plaintiff must allege: (1) a right secured by the Constitution or laws of the United States was violated; and (2) the alleged violation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  For the reasons below, the Court concludes that the SAC does not state any claims pursuant to Section 1983.

## 1.     Eighth Amendment Deliberate Indifference

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983."  *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976)).  "To maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle*, 429 U.S. at 104).  A plaintiff must allege sufficient facts to satisfy a two-prong test:  (1) an objective standard—the existence of a serious medical need; and (2) a subjective standard—deliberate indifference.  *See Jett*, 439 F.3d at 1096.

### a.     *Objective Prong*

A "serious medical need" exists if "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  *Jett*, 439 F.3d at 1096 (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).  Neither result is the type of "routine discomfort [that] is 'part of the penalty that criminal offenders pay for their offenses against society.'"  *McGuckin*, 974 F.2d at 1059 (alteration in original) (quoting

10

*Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).  "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin*, 974 F.2d at 1059–60.

Here, the SAC alleges that Plaintiff fell twice within an eight-day period and hit his head.  (SAC, at 6, 17.)  During the June 19, 2019 incident, Plaintiff had a large knot in the back of his head and was unable to walk.  (*Id*., at 7, 9.)  During the June 27, 2019 incident, Plaintiff fell head-first through a six-foot hole and hit his head and chin on an iron plate.  (*Id*., at 17, 20.)  "When an inmate sustains a head injury, whatever the cause, this may be the type of injury that goes beyond "[t]he routine discomfort that results from incarceration[.]"  *Ross v. Wash. State Dep't of Corr.*, No. 3:16-cv-05469-RJB, 2018 U.S. Dist. LEXIS 1729, at *7–8 (W.D. Wash. Jan. 3, 2018) (quoting *McGuckin*, 974 F.2d at 1059).  Plaintiff has alleged sufficient facts to state a serious medical need, at least in the immediate aftermath of his falls. *See, e.g., Williams v. Wasco State Prison*, No. 1:14-cv-01714-MJS (PC), 2015 U.S. Dist. LEXIS 62956, at *8 (E.D. Cal. May 13, 2015) (concluding that inmate alleged serious medical need in immediate aftermath of fall where he suffered "a significant impact to his head and back, lost consciousness, urinated on himself, and initially was unable to move").

### b.    *Subjective Prong*

The subjective "deliberate indifference" prong "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."  *Jett*, 439 F.3d at 1096.  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians

11

provide medical care." *McGuckin*, 974 F.2d at 1059.  However, deliberate indifference is met only if the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 834.  The defendant "must purposefully ignore or fail to respond to the plaintiff's pain or possible medical need for deliberate indifference to be established." *See McGuckin*, 974 F.2d at 1060.

i.     Nurse Defendants and Sergeant Defendants

Here, the SAC alleges that when Plaintiff fell on June 19, 2019, he was denied proper medical care by the Nurse Defendants and Sergeant Defendants. Specifically, Plaintiff alleges that Defendant Miller initiated the Code 1 after Plaintiff fell.  (SAC, at 6, 11–12.)  Defendants Tanner, Mendez, and Masigman examined Plaintiff, and observed that Plaintiff had a large knot on the back of his head and elevated blood pressure.  (*Id*., at 13–16.)  Defendant Tanner failed to ask Plaintiff about any prior medical history or medical condition.  (*Id*., at 15.) Defendants Tanner, Mendez, and Masigman told Plaintiff that he was a "strong black man" and instructed him to stand up, to which Plaintiff replied that he could not.  (*Id*., at 12, 14–16.)  The Nurse Defendants told the Sergeant Defendants to cancel the Code 1, and Defendant Wallace did so.  (*Id*., at 6, 14–16.)  Defendants Miller, Wallace, Tanner, Mendez, and Masigman engaged in a "cover up" of Plaintiff's injuries and acted "in concert" with each other to cancel the Code 1 to prevent Plaintiff from receiving medical treatment.  (*Id*., at 13, 15.)  Defendant Miller ordered two inmates to carry Plaintiff outside, where Plaintiff was placed on the ground for an hour without medical assistance.  (*Id*., at 7, 12, 14–16.)  The two inmates then carried Plaintiff to dorm #9, where Plaintiff passed out.  (*Id*., at 7, 11, 13–14, 16.)  Another Code 1 was called.  (*Id*.)  Defendant Mendez took Plaintiff's

blood pressure and discovered that it was 200/170.  (*Id*.)  At that time, Plaintiff was transported by ambulance to CMC-East Hospital.  (*Id*., at 7, 9, 16.)

The SAC does not contain sufficient allegations to satisfy the subjective prong of "deliberate indifference" with respect to the Nurse Defendants and Sergeant Defendants.  The SAC alleges that the Nurse Defendants examined Plaintiff after he fell and determined that he did not require any additional medical treatment.  (SAC, at 13–16.)  "A medical decision not to order [a form of treatment] . . . does not represent cruel and unusual punishment."  *Estelle*, 429 U.S. at 107–08.

To the extent Plaintiff is dissatisfied with the level of care he received, the proper claims should be negligence or malpractice, not Eighth Amendment deliberate indifference.  "[A]n inadvertent failure to provide adequate medical care," "negligence in diagnosing or treating a medical condition," and medical malpractice do not violate the Eighth Amendment.  *Estelle*, 429 U.S. at 105–06.  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

To the extent that Plaintiff's Eighth Amendment claim is based on his disagreement with the care he received and/or his disagreement with the cancellation of the first Code 1, such claim fails.  "A difference of opinion between a prisoner-patient and prison medical authorities does not give rise to a § 1983 claim."  *Franklin v. State of Oregon*, *State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).  Indeed, "'a difference of medical opinion' as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference."  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (quoting *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)).  Rather, "to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'"  *Toguchi v. Chung*, 391F.3d 1051, 1058 (9th Cir. 2004)

13

1   (alteration in original) (quoting *Jackson*, 90 F.3d at 332).  The SAC contains no

2   allegations to reasonably lead to either conclusion.

3        For these reasons, Plaintiff's Eighth Amendment deliberate indifference

4   claims against the Nurse Defendants and Sergeant Defendants fail.  The Court

5   previously explained the deficiencies of these claims in two separate orders.  (*See*

6   Order Dismiss. Compl., at 12–15; Order Dismiss. FAC, at 13–16.)  If Plaintiff files

7   an amended complaint with Eighth Amendment deliberate indifference claims

8   against the Nurse Defendants and Sergeant Defendants, he must correct these

9   deficiencies or risk dismissal of such claims.

10

11                      ii.     Supervisor Defendants

12        There can be no liability under Section 1983 unless there is an affirmative

13  link or connection between a defendant's actions and the claimed deprivation.  *See*

14  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978).  "A person 'subjects'

15  another to the deprivation of a constitutional right, within the meaning of section

16  1983, if he does an affirmative act, participates in another's affirmative acts, or

17  omits to perform an act which he is legally required to do that causes the

18  deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th

19  Cir. 1978).  The "requisite causal connection can be established not only by some

20  kind of direct personal participation in the deprivation, but also by setting in motion

21  a series of acts by others which the actor knows or reasonably should know would

22  cause others to inflict the constitutional injury."  *Gilbrook v. City of Westminster*,

23  177 F.3d 839, 854 (9th Cir. 1999) (quoting *Johnson*, 588 F.3d at 743–44).

24        Here, the SAC does not contain any factual allegations regarding any specific

25  act or omission of the Supervisor Defendants in connection with the purported denial

26  of medical treatment to Plaintiff on June 19, 2019.  Thus, the SAC fails to link any

27  of the Supervisor Defendants to the purported deliberate indifference to Plaintiff's

28  serious medical needs.  *See Johnson*, 588 F.3d at 743–44.

1    To the extent that Plaintiff seeks to impose Section 1983 liability on the

2  Supervisor Defendants, such claims are not cognizable.  "[G]overnment officials

3  may not be held liable for the unconstitutional conduct of their subordinates under a

4  theory of *respondeat superior* liability."  *Iqbal*, 556 U.S. at 676.  "Because

5  vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

6  Government-official defendant, through the official's own individual actions, has

7  violated the Constitution."  *Id*.  "A defendant may be held liable as a supervisor

8  under § 1983 'if there exists either (1) his or her personal involvement in the

9  constitutional deprivation, or (2) a sufficient causal connection between the

10  supervisor's wrongful conduct and the constitutional violation.'"  *Starr*, 652 F.3d at

11  1207 (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).  "The requisite

12  causal connection can be established . . . by setting in motion a series of acts by

13  others, . . . or by knowingly refus[ing] to terminate a series of acts by others, which

14  [the supervisor] knew or reasonably should have known would cause others to

15  inflict a constitutional injury,"  *Starr*, 652 F.3d at 1207–08 (alteration in original)

16  (quotation marks and citation omitted).  "Even if a supervisory official is not

17  directly involved in the allegedly unconstitutional conduct, '[a] supervisor can be

18  liable in his individual capacity for his own culpable action or inaction in the

19  training, supervision, or control of his subordinates; for his acquiescence in the

20  constitutional deprivation; or for conduct that showed a reckless or callous

21  indifference to the rights of others.'"  *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir.

22  2018) (alteration in original) (quoting *Starr*, 652 F.3d at 1208).  'Therefore, the

23  claim that a supervisory official knew of unconstitutional conditions and 'culpable

24  actions of his subordinates' but failed to act amounts to 'acquiescence in the

25  unconstitutional conduct of his subordinates' and is 'sufficient to state a claim of

26  supervisory liability.'"  *Keates*, 883 F.3d at 1243 (quoting *Starr*, 652 F.3d at 1208).

27    Here, the Supervisor Defendants cannot be liable simply based upon their

28  positions alone.  *See Davis v. Arpaio*, No. CV 05-3352-PHX-NVW (BPV), 2005

U.S. Dist. LEXIS 28594, at *4 (D. Ariz. Nov. 9, 2005) (holding that sheriff "cannot be liable simply based upon his position").  The SAC does not set forth factual allegations that the Supervisor Defendants were directly involved in any allegedly unconstitutional conduct, or had any knowledge of any constitutional deprivations by their subordinates and acquiesced in them.  *See Keates*, 883 F.3d at 1243.  Rather, the SAC contains only conclusory, speculative allegations that the Supervisor Defendants are responsible for the safety and security of CMC, preventing injuries to inmates, and supervising and training staff.  (SAC, at 6–7, 9–10.)  These conclusory allegations are "unadorned," "naked assertions" and "labels and conclusions" that lack any specific factual allegations, and are not sufficient to state any cognizable claims against the Supervisor Defendants.  *See Iqbal*, 556 U.S. at 678; *see Keates*, 883 F.3d at 1243 (affirming dismissal of supervisory liability claim based on conclusory and speculative allegations); *see also Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 926–27 (9th Cir. 2013) (concluding that "conclusory allegations" that a supervisory defendant "directed" other defendants, without factual assertions to support the allegation, were insufficient to defeat a motion to dismiss).

For these reasons, Plaintiff's Eighth Amendment deliberate indifference claims against the Supervisor Defendants in their individual capacities fail.  The Court previously explained the deficiencies of these claims in two separate orders.  (*See* Order Dismiss. Compl. 7–9; Order Dismiss. FAC 8–11.)  If Plaintiff files an amended complaint with Eighth Amendment deliberate indifference claims against the Supervisor Defendants in their individual capacities, he must correct these deficiencies or risk dismissal of such claims.

### 2.    Eighth Amendment Cruel and Unusual Punishment

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," which

16

prohibits cruel and unusual punishments.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)).  "[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'"  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "In other words, they must not be devoid of legitimate penological purpose, or contrary to 'evolving standards of decency that mark the progress of a maturing society.'"  *Morgan*, 465 F.3d at 1045 (citation omitted) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).  "An Eighth Amendment claim that a prison official has deprived inmates of humane conditions must meet two requirements, one objective and one subjective."  *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (quoting *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1995)).

### a.    *Objective Prong*

"[T]he deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  *Farmer*, 511 U.S. at 834 (internal quotations and citations omitted).  "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety."  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).  "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred. 'The more basic the need, the shorter the time it can be withheld.'"  *Id.* (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)).

Here, the SAC asserts two incidents in which Plaintiff's Eighth Amendment rights against cruel and unusual punishments purportedly were violated.  <u>First</u>, on June 19, 2019, Plaintiff slipped and fell in the west facility chow hall of CMC on the wet floor next to the scullery.  (SAC, at 6, 9, 11.)  Plaintiff alleges that the floor

1   was dirty, wet, littered with food and wrappers, and cluttered with trash cans (*id*., at

2   11); Plaintiff was not warned that the floor was wet (*id*., at 12); and there were no

3   mats to prevent Plaintiff from slipping on the wet floor (*id*., at 9).  Plaintiff has a

4   medical history of having a back operation on his lower disc in 2011.  (*Id*., at 14.)

5          <u>Second</u>, eight days later on June 27, 2019, Plaintiff was walking on crutches

6   down the E-yard walkway when his crutches went through an unguarded hole,

7   around which there were no warning signs, cones, flags, or staff.  (*Id*., at 17, 19–

8   20.)  Plaintiff fell head-first through the six-foot hole, hit his head and chin on an

9   iron plate, had the wind "taken out of him," and his crutch broke in half.  (*Id*.)  The

10  hole was there for the installation of pipes as part of the construction of the new

11  chow hall.  (*Id*., at 17, 20.)

12         The Ninth Circuit has held that "even if the floors . . . are slippery and

13  [inmates] might fall . . ., 'slippery prison floors . . . do not state even an arguable

14  claim for cruel and unusual punishment.'"  *LeMaire v. Maass*, 12 F.3d 1444, 1457

15  (9th Cir. 1993) (quoting *Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989)).

16  "Many courts have concluded that poorly maintained surfaces [and] wet floors . . .

17  do not generally pose a substantial risk of serious harm, and are instead claims

18  fundamentally sounding in negligence—which is insufficient to violate the Eighth

19  Amendment as a matter of law."  *Miranda v. Madden*, No.: 3:19-cv-01605-LAB-

20  RBM, 2019 U.S. Dist. LEXIS 192188, at *11 (S.D. Cal. Nov. 4, 2019) (quotations

21  omitted).  "Courts have reached this conclusion, even where the hazard has existed,

22  and been known to prison officials, for years and where the prisoner was required to

23  use the dangerous location . . . ."  *Pauley v. California*, No. 2:18-cv-2595 KJN P,

24  2018 U.S. Dist. LEXIS 193388, at *11 (E.D. Cal. Nov. 13, 2018) (collecting cases).

25         However, "[s]lippery floors without protective measures could create a

26  sufficient danger to warrant relief" where the plaintiff has a known exacerbating

27  condition.  *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998) (reversing grant of

28  summary judgment on an Eighth Amendment claim for prison officials' failure to

provide an accessible shower to inmate who used crutches when they knew the inmate had fallen and injured himself several times); *accord Sharrott v. Halawa Prison ADA Compl. Team*, No. 18-00486 JMS-RT, 2019 U.S. Dist. LEXIS 6624, at *9 (D. Haw. Jan. 14, 2019) ("To state a colorable constitutional violation, slippery floors normally must be alleged in conjunction with some other exacerbating condition."); *Brown v. Flores*, No. 18-CV-01578 LHK (PR), 2018 U.S. Dist. LEXIS 229920, at *7 (N.D. Cal. Oct. 3, 2018) ("In order to state a cognizable claim for relief, there must be a confluence of exacerbating conditions such that the flooded cell posed a serious, unavoidable threat to plaintiff's safety and defendants knew of this substantial risk.").  Thus, "awareness of a prisoner's disability or proclivity toward falling may turn a slippery prison floor into a potential constitutional claim, depending on the level of danger and awareness." *Jones v. Meddly*, No. 1:17-cv-00109-SAB (PC), 2019 U.S. Dist. LEXIS 122784, at *19 (E.D. Cal. July 23, 2019).

With respect to Plaintiff's fall in the chow hall on June 19, 2019, the SAC does not allege that Plaintiff had any known exacerbating conditions such that the condition of the floor would violate the Eighth Amendment.  The SAC alleges that Plaintiff has a medical history of having a back operation on his lower disc in 2011. (SAC, at 14.)  However, there are no allegations from which it reasonably could be inferred that an operation eight years ago presented an exacerbating condition such that Plaintiff was disabled or prone to falling, and that any Supervisor Defendant was aware of such condition.  In the absence of a known, exacerbating condition, the SAC does not state a claim for cruel and unusual punishment for the slippery floor in the chow hall.  *See LeMaire*, 12 F.3d at 1457.

With respect to Plaintiff's subsequent fall at the construction site on June 27, 2019, the SAC alleges an exacerbating condition:  Plaintiff had fallen eight days previously and was walking with the assistance of crutches.  (SAC, at 17, 19–20.) Nonetheless, this claim fails because there are no allegations that the Supervisor

1  Defendants were aware that Plaintiff had fallen, that he was walking with crutches,

2  and/or that he would be walking through the construction site.  Without such

3  allegations, the SAC does not state an Eighth Amendment claim for the conditions

4  surrounding Plaintiff's June 27, 2019 fall.  *See Slocum v. Fowler*, No. 2:16-cv-

5  02169-JAD-CWH, 2018 U.S. Dist. LEXIS 159298, at *7 (D. Nev. Sept. 18, 2018)

6  (holding that plaintiff did not allege an Eighth Amendment violation for a slippery

7  floor where there were no allegations that defendants had prior knowledge of a

8  physical limitation of plaintiff).

9

10                         a.    *Subjective Prong*

11         Subjectively, the prison official must act with "deliberate indifference" to an

12  inmate's health or safety—that is, "the official knows of and disregards an

13  excessive risk to inmate health or safety; the official must both be aware of facts

14  from which the inference could be drawn that a substantial risk of serious harm

15  exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.

16         Here, the SAC appears to assert that the Supervisor Defendants were

17  responsible for the conditions surrounding his two falls.  However, there are no

18  allegations in the SAC from which it reasonably could be inferred that any

19  Supervisor Defendant acted with deliberate indifference.  Indeed, there are only

20  conclusory, speculative allegations that the Supervisor Defendants were aware of

21  the purported risks, which are insufficient to state a claim for deliberate

22  indifference.  *See, e.g., Graves v. Cal. Dep't of Corr. & Rehab.*, No. EDCV 17-

23  1086 JGB (SPx), 2019 U.S. Dist. LEXIS 229086, at *19 (C.D. Cal. Nov. 14, 2019)

24  (holding that conclusory assertions unsupported by further factual allegations are

25  not sufficient to infer actual knowledge and indifference); *Marks v. Doe*, No. C09-

26  5489 RJB/KLS, 2010 U.S. Dist. LEXIS 24209, at *13 (W.D. Wash. Feb. 23, 2010)

27  (holding that conclusory allegations without specific facts regarding defendants'

28  knowledge was insufficient to plead deliberate indifference).  The only factual

allegation that any of the Supervisor Defendants had knowledge of the purported dangerous condition is that Plaintiff wrote Defendant Gastelo a letter about the construction site. (SAC, at 18.) However, this letter was written one month *after* Plaintiff's fall, and therefore cannot support the inference that Defendant Gastelo was aware of the risk before Plaintiff's fall and disregarded it. *See Farmer*, 511 U.S. at 837.

For these reasons, Plaintiff's Eighth Amendment cruel and unusual punishments claims fail. The Court previously explained the deficiencies of these claims in two separate orders. (*See* Order Dismiss. Compl. 9–11; Order Dismiss. FAC 11–13.) If Plaintiff files an amended complaint with an Eighth Amendment claim for cruel and unusual punishments, he must correct these deficiencies or risk dismissal of such claims.

## V.   CONCLUSION

For the reasons stated above, the Court **DISMISSES** the SAC **WITH LEAVE TO AMEND**. Plaintiff may have another opportunity to amend and cure the deficiencies given his *pro se* status. Plaintiff is **ORDERED** to, within thirty days after the date of this Order, either: (1) file a Third Amended Complaint ("TAC"), or (2) advise the Court that Plaintiff does not intend to pursue this lawsuit further and will not file a TAC.

The TAC must cure the pleading defects discussed above and shall be complete in itself without reference to the SAC. *See* L.R. 15-2 ("Every amended pleading filed as a matter of right or allowed by order of the Court shall be complete including exhibits. The amended pleading shall not refer to the prior, superseding pleading."). This means that Plaintiff must allege and plead any viable claims in the TAC again. Plaintiff shall not include new Defendants or new allegations that are not reasonably related to the claims asserted in the TAC.

///

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims.  Plaintiff is advised that pursuant to Rule 8, all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief."  **Plaintiff strongly is encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.**  In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims.  Plaintiff strongly is encouraged to keep his statements concise and to omit irrelevant details.  It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation. Plaintiff also is advised to omit any claims for which he lacks a sufficient factual basis.

**The Court explicitly cautions Plaintiff that failure to timely file a TAC, or timely advise the Court that Plaintiff does not intend to file a TAC, will result in a recommendation that this action be dismissed for failure to prosecute and/or failure to comply with court orders pursuant to Federal Rule of Civil Procedure 41(b).**

Plaintiff is not required to file an amended complaint, especially since a complaint dismissed for failure to state a claim without leave to amend may count as a strike under 28 U.S.C. § 1915(g).  Instead, Plaintiff may request voluntary dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a).  A Notice of Dismissal form is attached for Plaintiff's convenience.

Plaintiff is advised that this Court's determination herein that the allegations in the Complaint are insufficient to state a particular claim should not be seen as dispositive of the claim.  Accordingly, although the undersigned Magistrate Judge believes Plaintiff has failed to plead sufficient factual matter in the pleading, accepted as true, to state a claim for relief that is plausible on its face, Plaintiff is not required to omit any claim or Defendant in order to pursue this action.  However, if

1  Plaintiff decides to pursue a claim in an amended complaint that the undersigned

2  previously found to be insufficient, then pursuant to 28 U.S.C. § 636, the

3  undersigned ultimately may submit to the assigned District Judge a recommendation

4  that such claim may be dismissed with prejudice for failure to state a claim, subject

5  to Plaintiff's right at that time to file objections.  *See* Fed. R. Civ. P. 72(b); C.D. Cal.

6  L.R. 72-3.

7       IT IS SO ORDERED.

8

9  DATED: July 30, 2020

10  _____
   MARIA A. AUDERO
   UNITED STATES MAGISTRATE JUDGE

11

12  Attachments

13  Form Civil Rights Complaint (CV-66)

14  Form Notice of Dismissal

15

16

17

18

19

20

21

22

23

24

25

26

27

28